Next case on this afternoon's docket is the case of People of Fayetteville, Illinois v. Travis Darnell. We have Jason Drew for the appellant and Sharon Cunningham for the appellate. Mr. Drew, you may proceed. I represent the appellant in this matter, Mr. Travis Darnell. Mr. Darnell, in Franklin County, pled guilty to the offense of drug abuse homicide on May 3, 2010. A sentencing hearing was held on August 16, 2010, and a hearing on the defendant's motion to withdraw the guilty plea was held on February 22, 2011, which was denied by the trial court. The trial court has used its discretion in denying the defendant's motion to withdraw his guilty plea and vacate the sentence. It is within the court's discretion to allow the defendant to withdraw his guilty plea. However, the defendant must have a basis for said withdrawal. Otherwise, no grounds. In this case at hand, Mr. Darnell had a fundamental misunderstanding of this ability when he entered into the plea. Mr. Darnell believed, after speaking to his attorney and being admonished by the trial court, he would have the ability to withdraw his plea at his own discretion. So long as he did so within 30 days, and if I may note, there is nothing in the record that would indicate any kind of explanation to Mr. Darnell that this was an improper or incorrect apprehension of the grounds. In People v. Davis, the defendant was allowed to withdraw his plea of guilty based on a misapprehension of law and improper admonishment at the time of his plea. In Davis, the defendant believed and was informed that he was eligible for task probation and was admonished by the court, improperly admonished by the court, as to the minimum sentence possible at that time because the court admonished that probation was possible when it wasn't. Mr. Darnell, as stated previously, had a serious misapprehension of law, as stated, to his ability to withdraw his plea of guilty and the requirements to do so. Mr. Darnell believed that grounds to withdraw his plea was merely that he desired to do so. Mr. Darnell was never informed by his attorney or the trial court as to the necessary requirements for such withdrawal. On page 12 of the record, Mr. Darnell's hearing for his motion of withdrawal of the plea of guilty, counsel for Mr. Darnell stated he advised Mr. Darnell of his rights to withdraw his plea, but merely alluded to the need for cause. He never directly informed him what the cause was or what grounds were. Mr. Darnell merely thought that, well, at my discretion, would be the adequate grounds. Mr. Darnell was admonished by the court the need for grounds to withdraw his plea of guilty at the time he was sentenced. No one had explained, as stated, to Mr. Darnell the necessary requirements. This is not a case where the defendant entered into an open plea, got a bad decision, and now he wants another bite at the end of it. He actually filed his motion to withdraw his guilty plea on June 2nd, well over two months prior to having his sentence hearing, which was August 16th. Therefore, Mr. Darnell's misapprehension of the necessary requirements to withdraw his plea of guilty constitutes sufficient grounds to withdraw such a plea, according to the holding unit, People v. Davis. Which leads me into my second point. The defendant has a defense worthy of consideration by jury. Approximate cause is defined as the cause that directly produces an event, and without the event would not have occurred. Based on Dr. Haddingfield's autopsy and the dental, it cannot be proven by clear and convincing evidence that Mr. Darnell's actions were the approximate cause of Mr. Brotherton's death. Mr. Darnell had no way of knowing that Mr. Brotherton was one. Immediately upon receiving the drugs, crush him up into a powder, mix him up, and inject him. For two days, Mr. Brotherton consumed roughly 60 beers and had a blood alcohol content of 0.246, and consumed approximately six other drugs on the day in question when the OxyContin was provided. It is a question for a jury to decide if the injection of OxyContin was the approximate cause of Mr. Brotherton's death, or it was the combination of a VAC of 0.246 and the other additional six drugs Mr. Brotherton had in his system. Therefore, if a jury presented this evidence, could find that Mr. Darnell's actions were not the approximate cause of Mr. Brotherton's death. And lastly, the sentence that Penham received was excessive. In this matter, Mr. Darnell received 12 years in the Department of Corrections. Even though the max sentencing range for Mr. Darnell at the time was 30 years, and he received less than half of the maximum sentence, only when you take into consideration Mr. Darnell's actions does this become excessive. Mr. Darnell did not have any intent to kill or cause great bodily harm to Mr. Brotherton. As a matter of fact, it was his best friend, which I think the record reflects. Mr. Darnell provided the OxyContin only after Mr. Brotherton requested it. If Mr. Brotherton did not, or if Mr. Darnell did not provide it on that day, it's highly likely that Mr. Brotherton would have gotten it from a different source. It would just happen to be Mr. Darnell on that particular day. It's also highly likely that Mr. Darnell's criminal conduct would reoccur, given the fact that he had to witness his best friend die. The only culpability that Mr. Darnell is truly guilty of is delivering a controlled substance. According to Illinois Supreme Court Rule 615, subsection B4, allows the appellate court to reduce the punishment imposed by the trial court. Therefore, Ms. Darnell respectfully requests that this court reduce this sentence. To my actual respect, this action will remain. Thank you. Thank you. You have the opportunity to testify. Thank you. Ms. Shanahan. May it please the court. Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. In regards to the first subpoint in the defendant's brief, whether his plea was entered under a misapprehension of the law, I would note that in the absence of substantial objective proof showing that a defendant's mistake and impressions were reasonably justified, subjective impressions alone are not sufficient grounds to vacate a guilty plea. Furthermore, the defendant bears the burden of proving that his mistake and impression was objectively reasonable under the circumstances existing at the time of the plea. Now here, the defendant said that he believed he could withdraw his guilty plea at his discretion, and he was very adamant that this belief was based upon what the trial court told him. He even said that a transcript of the hearing would establish this. Well, here's what the trial court said, and I am quoting. You are presumed to be innocent of this charge, and the state has the burden of proving you guilty beyond a reasonable doubt. You do have the right to have a trial by jury at which the state would be required to prove your guilt to the satisfaction of the jury beyond a reasonable doubt. You have the right to plead not guilty as well as the right to enter a plea of guilty. If you do enter a plea of guilty, there will be no trial of any kind, and by your plea of guilty, you will be waiving your right to a trial by jury, the right to be confronted by and to cross-examine the witnesses against you, and the right to call witnesses to testify on your own behalf and present a defense to the charges. Do you understand that? The defendant said yes, he understood that. The trial court also asked the defendant if anyone had made him any promises other than the dismissal of count two in order to get him to plead guilty. The defendant said no. After the factual basis was presented, the trial court found sufficient evidence and entered the plea of guilty. Clearly, the trial court said nothing, which could be construed to mean that the defendant could withdraw his guilty plea at his discretion any time within 30 days. In fact, he very clearly says that here. If you do enter a plea of guilty, there will be no trial. But what were the factual basis? That's the question. As long as we discuss that, the factual basis, what did the judge say as the factual basis? Or what did the defendant say or the state say, I guess? I can refer to my brief for that. Yes, of course. The factual basis, I believe, would go more towards the defendant's second claim as to whether there was a reasonable basis. But I don't have a discussion of the factual basis in my brief. Was it like sole cause or a cause? A cause. Very clearly, a cause. That's most definitely. Was there any inference that they emphasized the intoxication and his possible clogging of arteries, et cetera, et cetera? That definitely was considered by the trial court. I mean, that was in the factual basis? In the factual basis, it was stated that the OxyContin was a cause of his death. But he didn't mention his health otherwise or his condition at the time he took it? Your Honor, I don't recall. I don't recall. But the point in this first sub-issue is whether he was told he could withdraw his guilty plea. And he said the judge told him he could. The record reveals that the judge did not tell him that. Moreover, the defendant never says that his attorney told him he could withdraw the guilty plea. So that shouldn't even be considered. But I would note that at the hearing on the motion to withdraw guilty plea, plea counsel said he did not tell the defendant that. Defendant's reliance on Peeble v. Davis is totally misplaced because in Davis there was a misadmonishment. And there is no doubt that in Davis the defendant relied upon the misadmonishment to his detriment. In this case, there was no misadmonishment. The defendant was not told he could withdraw his guilty plea. He may very well have thought that, but it was a subjective unreasonable belief. He was not told anything that would give a reasonable person a reason to believe that. Now, as far as a defense worthy of consideration, which I think goes more directly to your question, Your Honor, the record reveals that the defendant claims that the OxyContin provided was not the sole proximate cause of the victim's death. Now, the drug-induced homicide statute is satisfied by showing that death is proximately caused by the delivery of a controlled substance. The Defendant's Act need not be the sole or immediate cause of death. Rather, and this is the Illinois Supreme Court in Peeble v. Brown, it is sufficient if the Defendant's Act contributed to the cause of death. In Peeble v. Patton, this court noted that the state need only prove that the defendant's actions were a contributing cause of death, such that the death did not result from a source unconnected with the Defendant's Act. In the Second District in Peeble v. Boland, said liability for drug-induced homicide may be imposed for an act that is a proximate cause, though not necessarily the only proximate cause. Now, the OxyContin that the Defendant sold the victim was a proximate cause of his death. Dr. Heidings Felder testified that, and here I am quoting from Defendant's Exhibit 2, page 10, the injection of oxycodone was determinative in the cause of death in this case. If not for the intravenous injection of oxycodone, it is most likely that the effects of other orally taken drugs and ethanol would not have resulted in a fatal outcome in this case. So, the oxycodone that the Defendant sold the victim did not have to be the cause. It had to be a cause, and there is no doubt from Dr. Heidings Felder's report that it was a cause. Since the Defendant admitted that he sold the oxycodone to Jeremy, and the oxycodone was mixed with other drugs which resulted in the Defendant's death, then the Defendant's act indubitably contributed to the victim's death. Therefore, it's not a jury question. It is not a defense worthy of consideration. The jury could not say that the alcohol and the problems with its circulation were, that's what caused it and the oxycodone didn't, because Dr. Heidings Felder clearly said it was a cause. Touching briefly on the sentence, I would note that the standard of review on issues such as this is extremely deferential and that there is a rebuttable presumption that the sentence is proper. If it's within the range, this is well below the middle range. So it was an extremely reasonable sentence. The record reveals that the trial court gave due deliberation to the sentence. It considered the factual basis, the argument, the Defendant's statement to police in which he admitted his complicity and expressed his remorse. In fact, the trial court acknowledged the Defendant's remorse and the fact that the Defendant did not intend to cause Jeremy's death. However, he did reject Jeremy's, or defect the Defendant's claim, reject the Defendant's claim that the victim induced his own death by asking to buy the drugs. And the trial court also concluded that the Defendant knew or should have known that injecting oxycodone can have serious physical consequences up to and including death. Mr. Darnell should have been aware of that as everybody in this society today, I think, is aware of the possible consequences of illegal drug use. The trial court found two factors in aggravation. The Defendant had a significant criminal history including two felony convictions as an adult and he found the need to deter others. He did consider in mitigation that the Defendant did not contemplate that the victim would die. And therefore because, and again I'm quoting the trial court, the Defendant's actions clearly were a cause of this death and he should have realized it. And because the legislature has found drug-induced homicide to be a serious criminal offense and because the Defendant has a prior criminal history and because there was a need to deter others, all of these factors together make the sentence of 12 years extremely reasonable and most assuredly not an abuse of discretion. Justice Walsh, did I answer your question? Yes. Are there any other questions? No. Thank you, Ms. Shanahan. Mr. Kruger, do you have a follow-up? Kruger. As to the subjective proof on page 12 of the sentencing hearing of the record, Mr. Darnell's own attorney, Mr. Hopkins, admitted that he did advise Mr. Darnell of his rights, his appeal rights, his withdrawal rights. However, he said he merely alluded to having to have grounds for such. He never explained to him what this actually meant. I think all of the record also indicates that Mr. Darnell is below average intelligence and quite frankly his counsel should have made sure and explained to him what grounds went and the necessary requirements to meet such grounds. As to Mr. Heidinkeller's report, he also alludes to, in the record, says most likely, which is not beyond a reasonable doubt, as to the cause. And in addition, there was never a second opinion which was sought in this matter. I mean, the victim in this case had approximately six other drugs in the system, along with barbiturates. He had a .246 and a 95% blockage in one of his arteries at the age of 24. So I think if it was put to the jury, they could find that Mr. Darnell's actions were just not the proximate cause. That's the only two issues I'm going to address. Thank you. Thank you, Mr. Grimm and Ms. Shanahan. Thank you for your briefs and your arguments, and we'll take a matter in five minutes.